UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHRISTOPHER ILANDERS STREET,<br><br>　　　　　　　　　　　　Plaintiff,<br>v.<br>NEVADA DEPARTMENT OF CORRECTIONS, et al.,<br><br>　　　　　　　　　　　　Defendants. | Case No. 3:13-cv-00396-RCJ-VPC<br><br>ORDER |

This habeas matter under 28 U.S.C. § 2254 comes before the court on respondents' motion to dismiss petitioner Christopher Ilanders Street's counseled first amended petition as untimely (ECF No. 26). Street opposed (ECF No. 29), and respondents replied (ECF No. 39). As discussed below, this petition must be dismissed as untimely.

I.  **Background**

On September 26, 2007, Street pleaded guilty pursuant to a written plea agreement to possession of stolen property (first amended petition, exhibit 8).[1] The state district court adjudicated Street a habitual criminal and sentenced him to a term of life with the possibility of parole after ten years. Exh. 11. Judgment of conviction was entered on November 7, 2007. *Id.*

Street did not file a direct appeal. On October 30, 2008, he filed his first state postconviction petition. Exh. 14. On December 12, 2012, the Nevada Supreme Court

---

[1] Unless otherwise noted, exhibits referenced in this order are exhibits to petitioner's first amended petition (ECF No. 20) and are found at ECF Nos. 21-25.

1

affirmed the denial of the petition, and remittitur issued on January 7, 2013.  Exhs. 39, 40.  On April 4, 2013, Street filed his second state postconviction petition.  Exh. 41.  On January 16, 2014, the Nevada Supreme Court affirmed the denial of the petition, and remittitur issued on February 10, 2014.  Exhs. 52, 53.

On May 14, 2013, Street filed a motion to correct illegal sentence.  Exh. 42.  The state district court filed an order denying the motion on December 2, 2013, and Street did not appeal.  Exh. 51.  On May 30, 2014, Street filed a motion for modification of sentence.  Exh. 55.  The state district court denied the motion on June 25, 2014, and Street did not appeal.  Exh. 56.

Meanwhile, Street had dispatched his federal habeas petition for mailing on July 22, 2013 (ECF No. 10).  This court appointed counsel, and counsel filed a first amended petition on March 9, 2015 (ECF No. 20).  Respondents have moved to dismiss the petition as time-barred (ECF No. 26).

## II. **Legal Standards**

The Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect on April 24, 1996 and imposes a one-year statute of limitations on the filing of federal habeas corpus petitions.  28 U.S.C. § 2244(d).  The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).  Further, a properly filed petition for state postconviction relief can toll the period of limitations.  28 U.S.C. § 2244(d)(2).

A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his right diligently, and that (2) some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2009)(quoting prior authority).  Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063,

1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

Ignorance of the one-year statute of limitations does not constitute an extraordinary circumstance that prevents a prisoner from making a timely filing. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

With respect to equitable tolling due to mental impairment, the Ninth Circuit has set forth a two-part test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable to personally prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance . . . .

*Bills v. Clark*, 628 F.3d at 1099-1100 (9th Cir. 2010) (emphasis in original)(footnotes omitted); *see also id.* at 1100-01.

### III. **Instant Action**

Street sets forth two grounds for relief in the amended petition. He contends that (1) his trial counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights and (2) he was denied his Fourteenth Amendment rights to due

3

process and a fair trial when the trial court failed to acknowledge that it had discretion and sentenced Street as a habitual criminal (ECF No. 20, pp. 8-16).

The parties do not dispute that the AEDPA one-year statute of limitations expired on February 13, 2013 (ECF No. 26, p.8; ECF No. 29, P. 11). Street did not submit his federal petition for filing until July 22, 2013. This federal petition is, therefore, time-barred, unless Street is entitled to equitable tolling of the statute of limitations.

In his counseled response to the motion to dismiss the petition as time-barred, Street argues that he is entitled to equitable tolling because he was heavily medicated for his mental illness for the almost eleven months between the entry of the judgment of conviction and when he took his next action in state court, which was to file a postconviction habeas petition (ECF No. 29, pp. 11, 12-14). He also argues that his state postconviction counsel never contacted him and therefore, he did not know that 328 days had run on the AEDPA statute of limitations when the denial of his state postconviction petition was affirmed and remittitur issued. *Id.* at 14-17. Street states that instead of filing a federal habeas petition, on the advice of an inmate law clerk, Street filed a second state postconviction petition because he believed he had claims he needed to exhaust in state court first. *Id.* at 16-17.

First, Street argues that his mental illness and medications constituted extraordinary circumstances beyond his control that delayed the filing of his state postconviction petition (ECF No. 29, pp. 19-21). In his declaration in support of his opposition, Street states that after he pleaded guilty, his trial counsel told him he had no rights to appeal. Exh. 77, p. 2. He states that when he arrived at Northern Nevada Correctional Center (NNCC) in December 2007, he was depressed and suicidal. In August 2007, he was diagnosed with bipolar disorder, depression and psychosis and placed on several antipsychotic medications. He states that due to the medications he slept all the time and was extremely disconnected and lethargic. He was transferred to Ely State Prison (ESP) in January 2008 and remained on antipsychotic medications. He began to try to

4

wean off one of the drugs, Geodon, in February, 2008, and he stopped all psychotic medications in October 2008. Street's first ESP cellmate gradually helped him realize that he needed to file a state postconviction petition, and his cellmate helped him prepare the filings. *Id.* at 2-3.

Street attaches as exhibits hundreds of pages of his Nevada Department of Corrections (NDOC) records: his I-File, medical records, and case notes. Exhs. 58-60. However, in support of his allegations that he was so completely disconnected as to be unable to comprehend the need to pursue postconviction relief, he cites only to the several pages of his medical file that reflect his diagnoses of bipolar disorder, depression, anxiety, and psychosis and that he was treated with several antipsychotic drugs in differing combinations. *See, e.g.*, exh. 59, pp. 61, 77-78, 81-82, 84-91, 102, 103, 235, 246, 270. Street points to nothing in his NDOC records that indicates that the medications even hindered his ability to function, let alone rendered him unable to comprehend the need to timely file a federal habeas petition.

Moreover, during the time period in question, Street's NDOC records reflect that he was enrolled in education and employed as a barber. Exh. 58, pt. 4, p. 11 (ESP inmate assignment form dated 04/16/2008 that appears to be a request by a unit caseworker that Street be assigned to be a barber or unit porter), p. 14 (12/13/2007 employment request form completed by Street); Exh. 60, NDOC case notes (01/17/2008: will . . . apply for work. Wants to work. No issues/concerns), (04/10/2008: enrolled in education), (06/13/2008: assigned barber). Certainly, Street's medical records indicate that he was treated for significant mental health issues. On January 16, 2008, a medical notation reflects that Street convincingly claimed that he was hearing a running commentary of voices in his head. Exh. 59, p. 246. However, that same date, Street reported that he was not suicidal and also had sufficient self-awareness to complain that the drug Geodon was causing him to gain weight. *Id.* A February 22, 2008 medical notation indicates that Street stated that he wanted to stop taking Geodon, denied any

5

psychotic symptoms or other problems with the medications and was alert and oriented. *Id.*; *see also id.* at 270.

The court concludes that the record belies Street's claim that his mental illness and medications significantly impaired his ability to function. He has failed to demonstrate that they constituted extraordinary circumstances beyond his control that delayed the filing of his state postconviction petition. Accordingly, Street is not entitled to equitable tolling for the 328-day period from December 7, 2007 (date his conviction became final) to October 30, 2008 (date he filed his state postconviction petition).

Street's AEDPA time thus resumed running on January 7, 2013 when remittitur issued following the Nevada Supreme Court's affirmance of the denial of Street's state postconviction petition. Street acknowledges that, absent any equitable tolling, he then had 37 days remaining to timely file his federal habeas petition (ECF No. 29, p. 10). He claims that his state postconviction counsel rendered incredibly poor and unresponsive representation. *Id.* at 23. He claims the following: this left him in a situation in which he had no knowledge of how many days had passed prior to his state petition for writ of habeas corpus filing. Postconviction counsel never told him that he only had 365 days within which to file, that 328 days of his year under AEDPA had been used to get into state court, and that only 37 days remained within which to file his federal petition. Id. at 23-24.

Street urges that the Ninth Circuit decision in *Gibbs v. LeGrand* compels the conclusion that Street's state postconviction counsel violated a duty to protect his future legal interests, warranting equitable tolling here. *Id.* at 25. There the Ninth Circuit determined that Gibbs' appointed state postconviction counsel engaged in egregious misconduct and that the case turned on the fact that, despite Gibbs' repeated inquiries, counsel failed to inform him that the Nevada Supreme Court had denied the appeal of his state petition. *Gibbs v. LeGrand*, 767 F.3d 879, 883 (9th Cir. 2014). Gibbs' counsel had explicitly promised, in writing, to forward any notice from the state supreme court.

6

In June 2010, the Nevada Supreme Court affirmed the denial of Gibbs' state petition. Though Gibbs wrote to his attorney in June and again in October, he received no notice whatsoever from his counsel of the decision. He finally wrote to the Nevada Supreme Court in December and received a docket sheet that indicated that his appeal had been rejected six months earlier. *Id.*

In contrast to the *Gibbs* decision, however, in his declaration, Street acknowledges that in late December 2012, his state postconviction counsel sent him the December 12, 2012 Nevada Supreme Court order affirming the denial of his state petition. Exh. 77, p. 5. He also states that he received a copy of the January 7, 2013 remittitur from the court in late January 2013. *Id.*

Street argues that he sent numerous letters to counsel but she never advised him as to the need to timely file his federal habeas petition or that he was responsible for filing his federal petition (ECF No. 29, pp. 23-24). However, all the letters that Street includes are letters that he sent to his state postconviction counsel between 2009 and 2011 in which he discusses claims to include in his state petition and on appeal. Exhs. 61-73. Moreover, on January 16, 2013, nine days after remittitur issued, Street filed a *pro se* motion for reconsideration of the affirmance of the denial of his state petition with the Nevada Supreme Court. Exh. 74. Ignorance of the one-year AEDPA statute of limitations does not constitute an extraordinary circumstance that prevents a prisoner from making a timely filing. *See Rasberry*, 448 F.3d at 1154.

Having reviewed the record, and as the threshold necessary to trigger equitable tolling is very high, the court concludes that Street has not met his burden of demonstrating that he has been pursuing his rights diligently and some extraordinary circumstances prevented him from timely filing his federal petition. *Holland*, 560 U.S. at 649; *Miles*, 187 F.3d at 1107; *Miranda*, 292 F.3d at 1066. Street has further not met his burden to demonstrate that (1) either he was unable rationally or factually to personally understand the need to timely file, or that his mental state rendered him unable to

7

personally prepare a habeas petition and effectuate its filing; (2) and that he diligently pursued the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances. Accordingly, petitioner has not met his burden under the tests laid out in *Holland v. Florida* or *Bills v. Clark*. Street's habeas petition is dismissed as time-barred.

## IV.  **Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-51 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.*; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* Pursuant to Rule 11(a) of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meets the standard. The court will therefore deny petitioner a certificate of appealability on that issue.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss the first amended petition (ECF No. 26) is **GRANTED**.  The petition is **DISMISSED** as untimely.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion for extension of time to file an opposition to the motion to dismiss (ECF No. 28) is **GRANTED** *nunc pro tunc.*

**IT IS FURTHER ORDERED** that respondents' motion to file a late reply (ECF No. 38) is **GRANTED** *nunc pro tunc.*

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: 3 March 2016.

                                                  ROBERT C. JONES
                                                  UNITED STATES DISTRICT JUDGE